IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ANA BERRIZBEITIA, Plaintiff,

v.

COLORADO MESA UNIVERSITY, Defendant.

---

## COMPLAINT WITH JURY DEMAND

---

Plaintiff Dr. Ana Berrizbeitia, by and through her attorneys, Robinson & Henry, P.C., brings claims against Colorado Mesa University, and states as follows:

### INTRODUCTION

1.      This case concerns discrimination in the workplace.

2.      Colorado Mesa University ("Defendant") is a government owned public university with its principal campus located at 1100 North Ave., Grand Junction, Colorado 81501.

3.      Plaintiff Dr. Ana Berrizbeitia ("Dr. Berrizbeitia" or "Plaintiff") is a former employee of Defendant who suffered workplace discrimination primarily at the hands of her department head, Dr. Lisa Driskell.

4.      Dr. Berrizbeitia brings this action seeking economic, consequential, and exemplary damages for Defendant's discriminatory employment practices based upon Dr. Berrizbeitia's race and gender.

5.      Ultimately Dr. Berrizbeitia was terminated, not because of something she did, but in retaliation for attempting to stop workplace discrimination.

6.      Dr. Berrizbeitia brings claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §1981, and the Colorado Anti-Discrimination Act C.R.S. §24-34-402 to vindicate her rights to be free from discrimination and retaliation.

7.      At all material times hereto, Dr. Berrizbeitia was an employee within the meaning of 42 U.S.C. §2000e(f) and C.R.S. §24-34-402. At all times material hereto, Defendant was an employer in the State of Colorado within the meaning of 42 U.S.C. §2000e(b) and C.R.S. §24-34-402.

8.      Consistent with the protections under Title VII and 42 U.S.C. §1981, Dr. Berrizbeitia is a member of protected classes based on her sex (female), and her race/national origin (Latin/Hispanic American).

## JURISDICTION

9.      Dr. Berrizbeitia's claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, et seq., and 42 U.S.C. §1981.

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 and §1343(a)(4).

11.     Dr. Berrizbeitia's claims for compensatory and punitive damages are supported by 42 U.S.C. § 1981a(a)(1) and (b)(1) and 42 U.S.C. §1981.

12.     The Court has supplemental jurisdiction over Dr. Berrizbeitia's related state law claim under 28 U.S.C. § 1367.

13.     Dr. Berrizbeitia's claims for attorneys' fees and costs are supported by 42 U.S.C. § 2000e-5(k) and 42 U.S.C. §1988(b).

14.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (b)(3) because all of the events or omissions giving rise to the claims alleged occurred within the jurisdiction of the United States District Court of Colorado.

15.     Dr. Berrizbeitia filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") Charge 541-2025-01080 on or about December 16, 2024.

16.     Over 180 days have passed and the EEOC has failed to act.

17.     Despite the EEOC's failure to issue the right to sue letter, 180 days have passed and the EEOC has lost its jurisdiction over this matter. *Walker v. UPS*, 240 F.3d 1268 (10th Cir. 2001); *Burris v. MHM Support Servs.*, No. CIV-19-1174-SLP, 2020 U.S. Dist. LEXIS 92283 (W.D. Okla. May 27, 2020; *Farmer v. Gulf Oil Corp.*, Civil Action No. 83-F-1059, 1984 U.S. Dist. LEXIS 17413 (D. Colo. Apr. 19, 1984).

18.     Dr. Berrizbeitia has exhausted all administrative remedies and prerequisites of jurisdiction in this Court and this action is timely filed.

## FACTUAL BACKGROUND

19.     Dr. Berrizbeitia is a Latin/Hispanic American woman.

20.     Dr. Berrizbeitia was hired by Defendant in August of 2018, as an assistant professor of mathematics.

21.     At the time of her wrongful termination in August of 2024, Dr. Berrizbeitia was a tenure-track professor in mathematics.

22.     During her initial interview, Tracii Friedman and Lisa Driskell raised concerns that Dr. Berrizbeitia was too confident and vocal to be a good fit for the department. Dr. Berrizbeitia and her husband were offered a position despite these concerns, but Dr. Friedman wrote a letter to

then Vice President Cynthia Pemberton alleging that Dr. Berrizbeitia's husband had falsified his CV by listing his PhD thesis under the "Publications" heading. The concerns were promptly dismissed as listing a PhD thesis on a CV is common practice, and it was the citing clearly stated it was an internal university publication. This was a failed attempt to block Dr. Berrizbeitia and her husband's offer to work at the Defendant University.

23.    In 2018, Dr. Berrizbeitia was assigned an introductory math course for liberal arts majors. She immediately saw a need to make the course more engaging and relevant to the students, so she single handedly created at least a dozen projects, and customized them to fit each student's needs. The project-based course was so successful that she continued to teach it 3 more times. She was also serving as the mathematics representative in the assessment committee, so she suggested that these projects would satisfy the criteria for mathematical literacy that the university was missing. The projects were subsequently graded for the criteria and Dr. Berrizbeitia made appropriate edits to further align with the assessment needs.

24.    In 2020, upon learning of the success of the projects, the department head and her friend Tracii Friedman asked Dr. Berrizbeitia for the projects and her material. They then proceeded to officially change the course's structure to "project-based," used Dr. Berrizbeitia's projects and ideas, and Dr. Friedman was named the course coordinator and was given a raise. They cut Dr. Berrizbeitia out of the narrative entirely. When Dr. Berrizbeitia raised concerns about her intellectual property being appropriated without proper credit, the department head told her "we had this idea before you even started here." She was never credited with any aspect of the creation of the course.

25.    In 2021, a hiring committee was formed for an instructor position and Dr. Berrizbeitia was part of the committee. One of the applicants was a Muslim American woman that

had successfully completed a master's certificate at the Defendant University. Dr. Berrizbeitia ranked the applicant high on her list after her excellent interview. However, the department head and Tracii Friedman involved themselves in the hiring committee giving explicit instructions not to hire the Muslim candidate. They told the committee that the candidate was very difficult to schedule, and Tracii Friedman said that "she would not work with her" if she were to get hired, due to her "difficult personality." It was later revealed that the difficulty in schedule was due to her request not to teach night classes during Ramadan, and the "difficult personality" was a judgment on the candidate due to cultural differences. Another professor wrote a letter to the higher ups alerting them of the clear bias and injustice carried during this process.

26.     In the Summer of 2022, Dr. Berrizbeitia served as the faculty advisor to the Math Club, and Dr. Berrizbeitia had developed a friendship with the president of the Math Club, a student at the Defendant University.

27.     When Dr. Berrizbeitia's department head learned of Dr. Berrizbeitia's friendship with this student, Dr. Berrizbeitia was verbally reprimanded by the department head, and told she should not have a personal relationship with a student, despite Dr. Berrizbeitia not ever being accused of providing preferential treatment to one student over any other student.

28.     Dr. Berrizbeitia was told by her department head that she needed to have boundaries and could not be friends with students ever again.

29.     Other non-Latin/Hispanic American professors and male professors would openly socialize and befriend students, even drink socially with students outside of official campus activities, yet none of these colleagues of Dr. Berrizbeitia received the same retribution as Dr. Berrizbeitia.

30.     Further, the Defendant University does not have a policy prohibiting professors from befriending students.

31.     Dr. Berrizbeitia felt that she had no choice but to stop serving as the Math Club faculty advisor and separate herself from the students as a result of the retribution she received.

32.     A white Caucasian professor that had been hired a year after Dr. Berrizbeitia, took over as the Math Club faculty advisor in the Spring of 2023. This professor openly socialized with student members of the Math Club and told other faculty members and the department head that she was planning on inviting students over to her home for a celebration. Unlike Dr. Berrizbeitia, this professor was not reprimanded for having befriended students.

33.     In the fall of 2022, Dr. Berrizbeitia was informed by the department head of an optional pre-tenure portfolio that tenure-track professors could submit for feedback. Dr. Berrizbeitia talked to other professors in the department and in other departments and found that this was a useful, yet a time-consuming task, and that no one she had spoken with had done it. Dr. Berrizbeitia opted to prioritize a paper she was writing for publication. In January of 2023, the department head yelled at Dr. Berrizbeitia and told her that she *had to* complete the pre-tenure portfolio. Dr. Berrizbeitia apologized for not having understood that it was mandatory (it was not), and she proceeded to complete the assignment immediately.

34.     In February of 2023, Dr. Berrizbeitia was criticized by her department head and berated for two hours. She was told to adjust the way she talked, her facial expressions and even the way she was sitting in the classroom. Dr. Berrizbeitia told her department head that all of these reprimands and criticisms she was receiving were offensive. Dr. Berrizbeitia told the department head that she phrases things the way she phrases them, which is not unprofessional or mean to students, it is just how she is. Dr. Berrizbeitia pointed out that there were other professors in the

math department that were equally, if not more direct than she was, but since they are white males, it is not a problem. Dr. Berrizbeitia told the department head that she felt uncomfortable with being asked to be nicer or quieter or meeker because it simply isn't who she is, and there is nothing wrong with who she is. Dr. Berrizbeitia told the department head that she felt she was being told to code switch to make white people more comfortable.

35.    In late Spring of 2023, a former student of Dr. Berrizbeitia asked her if she would be teaching number theory. Dr. Berrizbeitia expressed regret that she wouldn't be doing so that fall. The student then approached the department head and suggested that Dr. Berrizbeitia teach the number theory class, because he wanted her to be his teacher. It was an innocent gesture on his part. The department head later chastised Dr. Berrizbeitia for telling him that "[she] was not assigned the course," because she considered it a boundary violation.

36.    In January of 2024, Dr. Berrizbeitia was once again reprimanded by her department head and told she needed to be nicer and set boundaries with students. The department head brought up something Dr. Berrizbeitia said to a student during their senior capstone practice presentation. The faculty was giving feedback to the students and each faculty member had one minute to provide input to the students. During the presentation of a student, whom the department head was serving as the student's advisor, the student said something that wasn't a word, and Dr. Berrizbeitia corrected her.  Dr. Berrizbeitia also gave the student some other advice about projecting her voice more. The department head told Dr. Berrizbeitia that she should have phrased it differently and that she was too direct and not helpful. Dr. Berrizbeitia was chastised for giving constructive feedback and "humiliating" students.

37.    However, a white Caucasian professor in the math department stapled McDonald's applications to failing exams and was given a slap on the wrist.

38.     Another white Caucasian male professor is extremely blunt with students, and he is never reprimanded for his direct approach.

39.     In January 2024, Dr. Berrizbeitia once again expressed discomfort and asked to be respected. The department head accused Dr. Berrizbeitia of "not listening to her," and used the pre-tenure portfolio as an example of Dr. Berrizbeitia's alleged insubordination. She also said that Dr. Berrizbeitia used the color printer and should not bring her child to work on the rare occasion that daycare was not an option.

40.     A white colleague, however, has a daughter that is the same age, and she would bring her child to work on a daily basis without consequence. This same colleague also used the color printer for the same activities for which Dr. Berrizbeitia used it.

41.     In Spring 2024, the department was renovating a classroom. The remodeling required some construction workers to install whiteboards on the walls, and the workers left drywall on the floor. The department head asked the administrative assistant, who is a woman of color from Madagascar, to clean up the room. The administrative assistant responded, saying that she had already put in a work order to facilities to clean it up. The department head told her to just do it herself because facilities take too long. The administrative assistant reluctantly did as she was told but found it offensive that she was asked to clean when it is not part of her job. She disclosed this information to Dr. Berrizbeitia the following day.

42.     In 2024, Dr. Berrizbeitia received the highest evaluation rating: 500/500. She had created a new style of teaching, tested it in one of her courses twice, and gave a presentation at a math conference. Dr. Berrizbeitia had also submitted a paper for publication and was the only professor to advise two senior projects. Despite all of this, the Vice President of Academic Affairs lowered Dr. Berrizbeitia's evaluation rating, telling Dr. Berrizbeitia that she did so because she

wanted to encourage Dr. Berrizbeitia to do more. The only other professor whose score was lowered in the math department was an Asian American professor.

43.    In Summer 2024, at a math conference, the department head told Dr. Berrizbeitia that she "asks too many questions and makes it all about herself." This comment came after several attendees praised Dr. Berrizbeitia's engagement. Organizers encouraged Dr. Berrizbeitia to join the Mathematical Association of America and become a session chair. The department head followed up by saying "I had the same questions, but I wasn't about to ask them out loud." Her comment discouraged Dr. Berrizbeitia from participating in subsequent talks. Other attendees observed the tension and asked if the department head had a problem with her. After Dr. Berrizbeitia's own talk, the department head asked a hostile question interpreted by others as a challenge to her competence.

44.    In August of 2024, during a meeting with Defendant University administrators, Dr. Berrizbeitia was informed of her termination. Claims were made that: Dr. Berrizbeitia attempted to identify students who wrote negative evaluations and confronted one of those students about her comments; that Dr. Berrizbeitia had disclosed student records in violation of FERPA; that Dr. Berrizbeitia had an inappropriate text exchange with a transitioning student; and that Dr. Berrizbeitia had expressed ill-wishes about a student contracting COVID.

45.    These allegations are pretextual to mask the underlying discriminatory actions by the Defendant.

46.    The student evaluations are not anonymous in small upper-division classes, making identification easily deducible; she never disclosed private grades or confidential information. The so-called confrontation was in fact an honest conversation seeking informed consent for a course environment the student had previously found uncomfortable. The student later performed well in

class and maintained a positive relationship with Dr. Berrizbeitia, and the student was not the source of the complaint, it was the department head who mischaracterized the situation. There was also no inappropriate content in the text message to the student and, in fact, the text messages had nothing to do with gender identity. Furthermore, the student's gender transition did not begin until a year after Dr. Berrizbeitia was no longer in communication with the student. Finally, the alleged COVID comment was never made. In fact, Dr. Berrizbeitia advocated for respectful discourse and accountability when another student made a harmful comment.

47.    The policies and procedures of the Defendant University were routinely disproportionately and unequally applied to Dr. Berrizbeitia while similarly situated white and male colleagues did not have to adhere to the same standards.

48.    Dr. Berrizbeitia's termination was the result of discrimination and retaliation for Dr. Berrizbeitia raising criticism of Defendant's discriminatory behavior.

40.    At all relevant times, the department head, Dr. Lisa Driskell, was acting as Defendant's agent.

41.    At all relevant times, Defendant was aware of Dr. Berrizbeitia's reports about Dr. Driskell's discrimination.

42.    All conditions precedent to this action have been performed or have occurred.

## FIRST CLAIM FOR RELIEF
### Gender Discrimination in Violation of Title VII of the Civil Rights Act, as Amended

43.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 42 of the Complaint as if fully set forth herein.

44.    At all relevant times to the allegations in this Complaint, Plaintiff was an employee within the meaning of Title VII.

45.    Plaintiff is a member of a protected class, as she is a woman.

46.     Plaintiff was qualified for her employment with Defendant.

47.     Plaintiff satisfactorily performed her position and job duties. Despite her qualifications and satisfactory performance, Plaintiff was discriminated against because of her gender.

48.     Plaintiff suffered an adverse employment action, as she was terminated.

49.     Defendant discriminated against Plaintiff on the basis of her sex in violation of Title VII in the terms, conditions and privileges of her employment, including but not limited to denying her employment opportunities and promotions, applying company policies differently towards her than other employees, failing to take appropriate action to correct the effect of the discriminatory practices complained of herein, and terminating her employment.

50.     The termination of Plaintiff's employment with the Defendant was based on and/or because of Plaintiff's gender, or Plaintiff's gender was a motivating factor in the termination, in violation of Title VII, 42 U.S.C. §2000e-2(a).

51.     Plaintiff has suffered and continues to suffer economic loss such as loss of past and future wages and employment benefits, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation and other economic and noneconomic as a direct and proximate result of Defendant's discriminatory conduct.

52.     Defendant knew or showed reckless disregard for whether its termination of Plaintiff's employment with Defendant constituted gender discrimination.

53.     The termination of Plaintiff's employment with Defendant was intentional, malicious and/or done with reckless indifference to Plaintiff's federally protected rights.

54.     Defendant is liable for the acts and omissions of its employees.

55.     As result of the discriminatory termination of Plaintiff's employment, Defendant is liable to Plaintiff under Title VII for economic and non-economic compensatory damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF
### Race Discrimination in Violation of Title VII of the Civil Rights Act, as Amended

56.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57.     At all relevant times to the allegations in this Complaint, Plaintiff was an employee within the meaning of Title VII.

58.     Plaintiff is a member of a protected class, as she is Latin/Hispanic American.

59.     Plaintiff was qualified for her employment with Defendant.

60.     Plaintiff satisfactorily performed her position and job duties. Despite her qualifications and satisfactory performance, Plaintiff was discriminated against because of her race and/or national origin.

61.     Plaintiff suffered an adverse employment action, as she was terminated.

62.     Defendant discriminated against Plaintiff on the basis of her race in violation of Title VII in the terms, conditions and privileges of her employment, including but not limited to denying her employment opportunities and promotions, applying company policies differently towards her than other employees, failing to take appropriate action to correct the effect of the discriminatory practices complained of herein, and terminating her employment.

63.     The termination of Plaintiff's employment with the Defendant was based on and/or because of Plaintiff's race, or Plaintiff's race was a motivating factor in the termination, in violation of Title VII, 42 U.S.C. §2000e-2(a).

64.     Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendant's discriminatory conduct.

65.     Defendant knew or showed reckless disregard for whether its termination of Plaintiff's employment with Defendant constituted race and/or national origin discrimination.

66.     The termination of Plaintiff's employment with Defendant was intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

67.     Defendant is liable for the acts and omissions of its employees.

68.     As result of the discriminatory termination of Plaintiff's employment, Defendant is liable to Plaintiff under Title VII for economic and non-economic compensatory damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs, in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
**Retaliation in Violation of Title VII of the Civil Rights Act, as Amended**

69.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 68 of the Complaint as if fully set forth herein.

70.     At all relevant times to the allegations in this Complaint, Plaintiff was an employee within the meaning of Title VII.

71.     Plaintiff belongs to multiple protected classes, as she is a woman, and Latin/Hispanic American.

72.     Plaintiff engaged in activity protected from retaliation under Title VII, 42 U.S.C. § 2000e-3(a), namely, Plaintiff reported to her department head and opposed Defendant's unlawful practice of sex, and race discrimination, made unlawful by 42 U.S.C. §2000e-2(a).

73.     Plaintiff suffered an adverse employment action, as she was terminated.

74.     The termination of Plaintiff's employment with Defendant occurred because she engaged in protected activity under Title VII, and Defendant's conduct was in violation of Title VII.

75.     The termination of Plaintiff was directly related to her protected activity and proximate in time thereto.

76.     Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendant's retaliatory conduct.

77.     Defendant knew or showed reckless disregard for whether its termination of Plaintiff's employment with Defendant constituted retaliation.

78.     The termination of Plaintiff's employment with Defendant was intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

79.     Defendant is liable for the acts and omissions of its employees.

80.     As a result of the retaliatory termination of Plaintiff's employment, Defendant is liable to Plaintiff under Title VII for economic and non-economic compensatory damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs in an amount to be determined at trial.

<u>**FOURTH CLAIM FOR RELIEF**</u>
**Discrimination in Violation of 42 U.S.C. 1981**

81.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 80 of the Complaint as if fully set forth herein.

82.     Plaintiff is a member of a protected class, namely, she is a Latin/Hispanic American.

83.    Defendant had the intent to discriminate against Plaintiff on the basis of race.

84.    Defendant's discrimination interfered with a protected activity, namely, Plaintiff's right to engage in employment free from discrimination and retaliation.

85.    Plaintiff was qualified for her employment with Defendant.

86.    Plaintiff suffered an adverse employment action, as she was terminated.

87.    The termination of Plaintiff's employment with the Defendant was based on and/or because of Plaintiff's race, and/or Plaintiff's race was a motivating factor in the termination.

88.    Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendant's discriminatory conduct.

89.    Defendant knew or showed reckless disregard for whether its termination of Plaintiff's employment with Defendant constituted racial discrimination.

90.    The termination of Plaintiff's employment with Defendant was intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

91.    As result of the discriminatory termination of Plaintiff's employment, Defendant is liable to Plaintiff under 42 U.S.C. § 1981 for economic and non-economic compensatory damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF
### Retaliation in Violation of 42 U.S.C. §1981

92.    Plaintiff incorporates by reference the allegations in Paragraphs 1 through 91 of the Complaint as if fully set forth herein.

93.    Plaintiff belongs to a protected class, as she is Latin/Hispanic American.

94.     Plaintiff engaged in activity protected from retaliation under 42 U.S.C. §1981, namely, Plaintiff reported and opposed Defendant's unlawful practice of racial discrimination.

95.     Defendant discriminated against Plaintiff in the terms and conditions of her employment by illegally terminating her employment in retaliation for her complaints of discriminatory practices, as more fully set forth in this Complaint.

96.     The termination of Plaintiff's employment with Defendant occurred because she engaged in protected activity under 42 U.S.C. §1981.

97.     Plaintiff has suffered and continues to suffer economic loss, emotional distress, humiliation, mental anguish, embarrassment, and damage to her reputation as a direct and proximate result of Defendant's retaliatory conduct.

98.     Defendant knew or showed reckless disregard for whether its termination of Plaintiff's employment with Defendant constituted retaliation.

99.     The termination of Plaintiff's employment with Defendant was intentional, malicious and/or done with reckless indifference to Plaintiff's rights.

100.     As a result of the retaliatory termination of Plaintiff's employment, Defendant is liable to Plaintiff under 42 U.S.C. §1981 for economic and non-economic compensatory damages, punitive damages, pre- and post-judgment interest, and reasonable attorneys' fees and costs in an amount to be determined at trial.

### SIXTH CLAIM FOR RELIEF
**Discriminatory or Unfair Employment Practices in Violation of C.R.S. §24-34-402**

101.     Plaintiff incorporates by reference the allegations in Paragraphs 1 through 100 of the Complaint as if fully set forth herein.

102.     Pursuant to 28 U.S.C. § 1367, this Court has jurisdiction over claims of discrimination asserted by Plaintiff based on state law.

16

103.    Plaintiff is a woman, and Latin/Hispanic American and as such is a member of protected classes pursuant to C.R.S. § 24-34-402(1)(a).

104.    Defendant violated Plaintiff's civil rights afforded to her under C.R.S. § 24-34-402(1)(a) through discrimination against her by the wrongful discharge of her employment because of her membership in protected classes.

105.    Defendant violated Plaintiff's civil rights afforded to her under C.R.S. § 24-34-402(1)(e)(IV) through unlawful retaliation against her opposing unfair employment practices under C.R.S. § 24-34-402.

106.    Defendant discriminated against Plaintiff on the basis of her gender, and in violation of C.R.S. §24-34-402 in the terms, conditions and privileges of her employment, including but not limited to denying her employment opportunities and promotions, applying company policies differently towards her than other employees, failing to take appropriate action to correct the effect of the discriminatory practices complained of herein, and terminating her employment

107.    Defendant engaged in intentional discriminatory or unfair employment practices with respect to Plaintiff.

108.    As a proximate result of Defendant's unlawful and intentional conduct, Plaintiff has suffered, is now suffering, and will continue to suffer loss of past and future wages, employment benefits, emotional distress, mental anguish, humiliation, loss of reputation and other economic and non-economic losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Dr. Ana Berrizbeitia respectfully requests that this Court enter judgment in her favor and against Defendant Colorado Mesa University, and award her all relief as allowed by law, including, but not limited to the following:

a. Economic compensatory and consequential damages including, but not limited to, front pay, back pay, benefits, and all direct and proximate financial losses incurred by Plaintiff in an amount to be determined at trial;

b. Non-economic compensatory and consequential damages including, but not limited to, emotional distress, loss of reputation, humiliation, loss of enjoyment of life, and other categories of non-economic in an amount to be determined at trial;

c. Punitive damages as permitted by law in an amount to be determined at trial;

d. Pre and post judgment interest;

e. Attorneys' fees and costs as permitted by law;

f. Such further and other relief as the Court deems fair, just, and equitable.

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE**

Respectfully submitted this 15th day of April 2025.

**ROBINSON & HENRY, P.C.**

*s/ Richard E. Schmittel, Jr.*
Joseph P. Sanchez
Richard E. Schmittel, Jr.
Robinson & Henry, P.C.
11080 Circle Point Rd., Suite 140
Westminster, CO 80020
Telephone: (720) 597-3644
Joseph.sanchez@robinsonandhenry.com
Richard@robinsonandhenry.com